**Paul D. SHEWFELT, Petitioner–Appellant,**

v.

**State of ALASKA; Margaret M. Pugh, Respondents–Appellees.**

**No. 99–35647.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 7, 2000.

Filed Oct. 2, 2000.

---

Michael S. Taggart, Assistant Federal Defender, Office of the Federal Defender, Anchorage, Alaska, for the appellant.

W.H. Hawley, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, Alaska, for the appellees.

Before: BROWNING, FLETCHER, and GOULD, Circuit Judges.

PER CURIAM:

Appellant Paul D. Shewfelt appeals the district court's grant of summary judgment for Respondent Margaret M. Pugh, the Commissioner of Corrections for the state of Alaska. We affirm.

## I.

Shewfelt was tried by jury for sexual assault in the first degree in Fort Yukon, Alaska. During its deliberations, the jury asked to rehear the entire testimony of the victim and Shewfelt. Superior Court Judge Hodges contacted both Shewfelt's attorney and the prosecutor, and both at-

torneys agreed to the playback. However, Shewfelt was not informed and was not present during the playback. Judge Hodges permitted the in-court clerk to play the requested tapes for the jury. The replay request proceedings were not placed on the record, apparently because the jury was deliberating in the courtroom where the recording equipment was located.

The jury convicted Shewfelt and the judge sentenced him to eight years with three years suspended. He is currently on probation.

After discovering that a playback had occurred during his absence, Shewfelt filed a motion for a new trial, arguing that his right to be present at all stages of trial had been violated. The superior court conducted an evidentiary hearing and eventually granted his motion.[1] The trial judge found that "the mere presence of Mr. Shewfelt during the replay of testimony ... certainly may have had an effect on the outcome" and concluded that the state had not proven Shewfelt's absence was harmless beyond a reasonable doubt.

After the Alaska Court of Appeals declined review, the Supreme Court of Alaska reversed and affirmed Shewfelt's conviction. *See State v. Shewfelt,* 948 P.2d 470 (Alaska 1997). In its notice of errata, the state high court concluded the trial court's error was harmless beyond a reasonable doubt, rejecting the argument that Shewfelt's presence might have affected the verdict:

> Moreover, focusing on whether a defendant's presence at a playback might have benefitted the defendant would make it difficult, if not impossible, for the State to prove harmless error. A defendant's presence arguably could have an advantageous effect in any case, not just in those such as Shewfelt's

where the defendant likely knows the jurors. Thus, even if the State carefully conducted all playback proceedings on the record, a party might still successfully obtain a new trial by simply alleging that such beneficial effects would have occurred had the party been present during the playback. Because jurors' psychological states cannot be recorded, focusing on potential benefits to the defendant's absence from playback might be tantamount to creating a rule that a defendant's absence from a playback is *per se* reversible error.

Having exhausted his state remedies, Shewfelt filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondent moved for summary judgment. The district court adopted the magistrate's report—which concluded that Shewfelt's non-consensual absence from the jury playback was constitutional error but harmless—and granted the state's motion for summary judgment. The district court found Shewfelt's absence from the playback "totally irrelevant to the jury's decision making process."

Shewfelt appeals to this court.[2]

## II.

The district court's decision to grant or deny a federal prisoner's petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2241 is reviewed de novo. *See McLean v. Crabtree,* 173 F.3d 1176, 1180 (9th Cir.1999). A grant of summary judgment is also reviewed de novo. *See Balint v. Carson City,* 180 F.3d 1047, 1050 (9th Cir.1999) (en banc).

## III.

■ The court's failure to provide a defendant with the opportunity to be present at the playback of trial testimony violates

---

1. The superior court judge initially denied Shewfelt's motion for a new trial. However, the state court of appeals reversed and remanded, noting "there was an insufficient record for [the judge's] conclusion that Shewfelt was not prejudiced."

2. The district court granted a certificate of appealability, certifying the following issue for appeal: whether Paul Shewfelt's non-consensual absence from the playback of testimony during his jury trial violated his rights under the Sixth and Fourteenth Amendments.

the defendant's Sixth Amendment rights. *See Hegler v. Borg,* 50 F.3d 1472, 1478 (9th Cir.1995); *see also* Fed.R.Crim.P. 43(a).[3] It also violates Alaskan state law. *See Dixon v. State,* 605 P.2d 882, 884 (Alaska 1980); *see also* Alaska Rule of Criminal Procedure 38(a). That counsel were notified is irrelevant; Shewfelt must personally waive his right to be present, which he did not do. *See United States v. Kupau,* 781 F.2d 740, 743 (9th Cir.1986).

■ Shewfelt's absence during the playback of trial testimony is a "trial error," as opposed to a structural error. *See Hegler,* 50 F.3d at 1477. Trial error affects the presentation of the case to the jury and must be quantitatively assessed to determine whether it had an effect on the outcome of the trial. *See Arizona v. Fulminante,* 499 U.S. 279, 310, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991).[4] Hence, such error is subject to harmless error analysis.

■ The burden of persuasion to demonstrate the harmlessness of constitutional trial error in the context of collateral review lies with the government. *See Keating v. Hood,* 191 F.3d 1053, 1062 (9th Cir.1999).

### IV.

■ In *Brecht v. Abrahamson,* 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993), the Supreme Court enunciated a new standard for determining harmless error on collateral review: Shewfelt is not entitled to relief unless the record demonstrates the error "had substantial and injurious effect or influence in determining the jury's verdict." *Id.* at 637, 113 S.Ct. 1710. If there is " 'grave doubt' about whether the error had substantial and injurious effect on the jury's verdict, the court should not treat the error as harmless." *Bonin v. Calderon,* 59 F.3d 815, 824 (9th

Cir.1995). The state, however, should not be put to the "arduous task [of a retrial] based on mere speculation that the defendant was prejudiced by trial error; the court must find that the defendant was actually prejudiced by the error." *Calderon v. Coleman,* 525 U.S. 141, 146, 119 S.Ct. 500, 142 L.Ed.2d 521 (1998) (citations omitted).

This court found harmless error in *Hegler,* 50 F.3d at 1478, where the defendant was not present when the court reporter reread trial testimony to the jury. We said:

> The evidentiary hearing conducted by the district court established that the court reporter read the testimony without inappropriate inflection or comment, and that the substance of the readback was not materially different from the witness's testimony at trial. Indeed, there is no evidence indicating there was any improper conduct during the reading of the testimony to the jury.

*Id.* We concluded that "[u]nder these circumstances, a habeas petitioner is not entitled to relief." *Id.* (citations omitted).

We also found harmless error under similar circumstances in *Bustamante v. Cardwell,* 497 F.2d 556 (9th Cir.1974). In *Bustamante,* the jury requested to hear a tape recording of instructions that was replayed to the jury without the defendant's knowledge and presence. After an evidentiary hearing, the district court found that the judge made no inappropriate comments, the tapes were played back in their entirety, the jury could hear them, and all members of the jury were present. We concluded the state met its burden of showing that nothing prejudicial occurred and that Bustamante's absence was harmless beyond a reasonable doubt. *Id.* at 557–58.

---

3. Fed.R.Crim.P. 43(a) provides: "The defendant shall be present at the arraignment, at the time of the plea, at every stage of the trial including the empaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by this rule."

4. Structural errors, on the other hand, are those which affect the "framework within which the trial proceeds" and requires reversal per se. *See id.*

*Hegler* and *Bustamante* strongly support finding harmless error in this case. The government demonstrated that no improper conduct occurred during the playback proceedings. It established that there was nothing improper with the replay of the testimony and no improper communications with the jurors from the court, the in-court clerk, or any other person took place during the replay. It demonstrated the absence of any unusual circumstances—e.g., improper statements, selective playbacks, missing jurors—occurring during the playback.[5] The court clerk followed the normal replay procedure. Because the testimony of both Shewfelt and the victim was played, including the cross-examination of those witnesses, there was no bias in the presentation of evidence. No representative from either party was present, and neither party gained any tactical or psychological advantage. In light of all these factors, we find the government met its burden of persuasion to demonstrate the error was harmless beyond a reasonable doubt.

AFFIRMED.

---

5. The only unusual occurrence is that the jurors arguably misunderstood the rule that the "foreperson" must request a playback to mean that "four persons" must request playback; it is difficult to see, however, how this has any impact on the harmless error analysis.